**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **WILLIAM OLIVER and CASEY OLIVER** | **PLAINTIFFS and COUNTER-DEFENDANTS** |
| V. | **CASE NO. 5:23-CV-5205** |
| **SOUTHWEST HOMES OF ARKANSAS, INC.** | **DEFENDANT, COUNTER-CLAIMANT, and THIRD-PARTY PLAINTIFF** |
| V. | |
| **OLIVER BUILDERS, LLC** | **THIRD-PARTY DEFENDANT** |

**OPINION AND ORDER**

Before the Court is Defendant, Counter-Claimant, and Third-Party Plaintiff Southwest Homes of Arkansas, Inc.'s Motion to Compel Arbitration (Doc. 11),[1] to which Plaintiffs and Counter-Defendants William Oliver and Casey Oliver and Third-Party Defendant Oliver Builders, LLC ("Respondents") filed a Response (Doc. 15). The Court heard argument on the Motion at this matter's Case Management Hearing on March 5, 2024. The Motion is now fully briefed and ripe for review.

This case arises from an employment relationship between the parties. The Olivers' Complaint (Doc. 2) brings a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, on behalf of themselves and similarly situated individuals. They allege that Southwest Homes misclassified them as independent contractors and withheld commissions owed to them for their work as "New Home

---

[1] *See also* Doc. 16 (Southwest Homes's Brief in Support).

1

Consultants." Their Complaint asserts four claims: an FLSA claim for failure to pay overtime compensation; a failure to pay minimum wage and overtime compensation claim under the Arkansas Minimum Wage Act, Ark. Code Ann. §§ 11-4-210, 11-4-211; a claim seeking a declaratory judgment that the provisions of the parties' employment agreement that eliminate the Olivers' commission entitlements are invalid under Arkansas law, pursuant to Ark. Code Ann. §16-111-101, *et seq.*, and 28 U.S.C. § 2201; and an unjust enrichment claim.

Southwest Homes's Answer (Doc. 7) brings three counterclaims against the Olivers and a Third-Party Complaint against Oliver Builders, LLC ("Oliver Builders"), of which the Olivers are the principals: interference with a business expectancy, theft/conversion, and civil conspiracy. Southwest Homes maintains that the Olivers and Oliver Builders improperly used its proprietary confidential information for a competing enterprise, including lists of prospective customers.

In the Motion at bar, Southwest Homes contends that all of the parties' claims, counterclaims, and third-party claims are subject to binding arbitration pursuant to Southwest Homes's Policy for Submission of Disputes to Final and Binding Arbitration ("Arbitration Agreement"). *See* Doc. 12, pp. 9–24.

The Federal Arbitration Act ("FAA") provides that certain arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This text reflects the overarching principle that arbitration is a matter of contract," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation omitted), and "a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T*

2

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Courts must therefore "rigorously enforce arbitration agreements according to their terms." *Italian Colors*, 570 U.S. at 233.

Because arbitration is a matter of contract, an agreement's validity depends on state contract law. *Torres*, 781 F.3d at 968 (citing *Concepcion*, 56 U.S. at 339). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Id.* (citing *Faber v. Menard*, 367 F.3d 1048, 1052 (8th Cir. 2004)). Accordingly, a court must ask: (1) "whether the arbitration agreement is valid," and (2) "whether the dispute falls within the terms of that agreement," *Id.*, and it must resolve any doubts about arbitrability in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)

Here, it is undisputed that Southwest Homes and the Olivers entered into an arbitration agreement. Southwest Homes attached the Agreement, signed by the Olivers, to their brief, *see* Doc. 12, pp. 9–24, and although Oliver Builders was not a party to the Agreement, Respondents stipulated that "[s]hould the Court compel arbitration, these Responding Parties have no objection to the inclusion of Oliver Homes, LLC within that Order, despite the clear language that the Arbitration Policy ONLY pertains to the employee and the Company," (Doc. 15, p. 6 n. 2). Moreover, the Agreement's broad language appears to encompass the disputes at issue. *See* Doc. 12, pp. 9–10 ("This Policy requires that the Company and every employee arbitrate all Covered Disputes. 'Covered Disputes' include," *inter alia*, "any controversy, complaint, misunderstanding or dispute arising under . . . the Fair Labor Standards Act of 1938," "violations of Arkansas law," and "all other local, state, and federal statutory claims, and amendments thereto,

3

and all contract, tort, other common law and constitutional claims.") However, Respondents maintain that they are not bound to arbitration because: (1) Southwest Homes waived its right to arbitrate, and (2) the Arbitration Agreement lacks mutuality of obligation and is thus unenforceable. The Court will consider each issue in turn.

"[W]hether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (second alteration in original); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Accordingly, the Court must decide whether Respondents' allegations of waiver and lack of mutuality are questions of arbitrability. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

Turning first to waiver, Respondents argue that because Southwest Homes did not raise arbitration as a defense in its Answer and actively sought relief by filing counterclaims and adding a third-party defendant, it has waived its right to arbitrate under the Agreement. Federal courts distinguish between procedural and substantive challenges to arbitrators' authority to resolve disputes. *Int'l Bhd. of Elec. Workers, Loc. Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1098 (8th Cir. 2004) (citations omitted); *see also Howsam*, 537 U.S. at 83–84. "[J]urisdictional challenges of a substantive nature are generally for judicial resolution whereas jurisdictional challenges of a procedural nature are generally appropriate for submission to the arbitrators themselves." *Hope Elec. Corp.*, 380 F.3d at 1098. Waiver is an issue of procedural arbitrability. *Howsam*, 537 U.S. at 83–85 (citations omitted). Therefore, unless the parties

4

have clearly and unmistakably provided otherwise, waiver is for the arbitrator to decide. *Pro Tech Indus., Inc.*, 377 F.3d at 871–72 (citing *Howsam*, 537 U.S. at 83–85 and collecting Eighth Circuit cases); *see Hope Elec. Corp.*, 380 F.3d at 1099 (holding that courts must "refuse to address issues of procedural arbitrability even in the context of a motion to compel, and, instead, defer to the authority of the arbitrators to decide such issues"). The Court finds no such provision in the Arbitration Agreement. The question of waiver thus falls within the arbitrator's jurisdiction, not the Court's.

Next, Respondents argue that because Southwest Homes has the unilateral right to cancel or terminate the obligation to arbitrate whenever it chooses, the Arbitration Agreement is unenforceable for lack of mutuality of obligation. As this argument calls the validity and enforceability of the Agreement into question, it is an issue of substantive arbitrability. *Cf. Howsam*, 537 U.S. at 84 ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."); *Laurich v. Red Lobster Rests., LLC*, 295 F. Supp. 3d 1186, 1219 (D.N.M. 2017) (explaining that "substantive arbitrability questions" include those that question "whether the parties executed a valid arbitration agreement"). Unlike procedural issues, "issues of substantive arbitrability . . . are for a court to decide." *Howsam*, 537 U.S. at 85 (quoting RUAA § 6(c), and cmt. 2, 7 U.L.A. 13 (Supp. 2002)).

However, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, (1995). The parties can delegate substantive arbitrability decisions to the arbitrator as long as the delegation is "clear[ ] and

5

unmistakabl[e]." *Pro Tech Indus., Inc.*, 377 F.3d at 871 (quoting *Howsam*, 537 U.S. at 83 and *AT&T Tech., Inc.*, 475 U.S. at 649); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." (citations and internal quotations omitted)). Thus, the narrow question presented by Respondents' second argument is: "Did the parties agree to submit the arbitrability question itself to arbitration?" *First Options of Chicago, Inc.*, 514 U.S. at 943.

The parties did not brief this question. But during oral argument, the Court pointed Respondents' counsel to the following provision from the Arbitration Agreement:

> *The arbitrator shall have the sole authority to rule on his/her own jurisdiction*, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute. Such rulings are governed by and construed in accordance with the Federal Arbitration Act which shall apply to any rights, obligations and proceedings pursuant to this Policy, including any actions to compel, enforce, vacate, or confirm proceedings, awards, orders of an arbitrator, or settlements.

(Doc. 12, p. 11) (emphasis added).

Here, the parties clearly and unmistakably agreed to delegate to the arbitrator *the sole authority* to decide all questions involving the arbitrability of legal claims. The Court notes as persuasive that this language mirrors the American Arbitration Association's model delegation clauses. *See, e.g.*, Rule 6(a) of AAA Employment Arbitration Rules ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."); *CFL Pizza LLC v. Hammack*, 2017 WL 445743, at *3 (M.D. Fla. Feb. 1, 2017) (finding that by incorporating Rule 6(a), the parties "'clearly and unmistakably agreed that the

arbitrator should decide' issues of arbitrability"); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (collecting cases holding similarly).

If an arbitration agreement contains a delegation clause, the party opposing a motion to compel must specifically challenge that clause's validity under contract-formation principles. *See Rent-A-Ctr., W.*, 561 U.S. at 72. It is not sufficient to challenge the validity of the contract generally; rather, "the basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* at 71. This is true even where, as here, the underlying contract is an agreement to arbitrate. *Id.* at 71–72 (citations and footnotes omitted). Yet Respondents do not challenge the delegation clause specifically. Instead, they argue generally: "While the Policy appears to require Southwest Homes to arbitrate covered disputes, it actually permits Southwest Homes to unilaterally terminate *the Policy* at any time it chooses, regardless of motivation. This lack of mutuality renders *the Policy* unenforceable . . . ." *Id.* at p. 5 (emphasis added). That is not enough. Absent a specific challenge to the delegation clause, the Court finds that the Arbitration Agreement requires that the parties' dispute over the arbitrability of claims be decided by the arbitrator, including Respondents' lack of mutuality argument.

The final issue is whether the pendent counterclaims and third-party claims for interference with a business expectancy, theft/conversion, and civil conspiracy must also be compelled to arbitration. As a contractual matter, an agreement to arbitrate "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc.*, 514 U.S. at 943. Respondents stipulated to the inclusion of Oliver Builders in an order to compel. *See* Doc. 15, p. 6 n. 2. In their stipulation, they argue that "the Arbitration Policy ONLY pertains to the employee

and the Company," *id.*, but did not otherwise brief the arbitrability of the pendent claims. The Court cannot find that the parties clearly and unmistakably agreed to arbitrate the arbitrability of the pendent claims on this scant evidence. *First Options of Chicago, Inc.*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so." (quoting *AT&T Tech., Inc.*, 475 U.S. at 649))*; Bigge Crane & Rigging Co. v. Entergy Ark., Inc.*, 2015 Ark. 58, at *6 (2015) (finding that there was no clear and unmistakable evidence from an arbitration agreement that a signatory and a nonsignatory agreed to arbitrate the issue of whether their dispute was arbitrable for the simple reason that there was no contract between them (citing, as persuasive, *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 610 (S.D.N.Y. 2011)).

However, citing *Holistic Industries of Arkansas, LLC v. Feuerstein Kulick LLP*, Southwest Homes argues that Oliver Builders is nevertheless bound to the Arbitration Agreement under the doctrine of direct benefits estoppel. 2021 WL 4005872 (E.D. Ark. Sept. 2, 2021). "Under the direct benefits estoppel theory, a nonsignatory may be compelled to arbitrate where the nonsignatory knowingly exploits the benefits of an agreement containing an arbitration clause[ ] and received benefits flowing directly from that agreement." *Id.* at *11 (citations and quotation marks omitted). While acknowledging that the Arkansas Supreme Court has not weighed in on the exact question presented, the Eastern District opined:

> [T]he Arkansas Supreme Court recognizes the ability of a nonparty to "compel arbitration through 'traditional principles of state law' such as 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Bigge Crane & Rigging Co.*, 2015 Ark. at 4 (quoting *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Additionally, though not binding, the

8

> Arkansas Court of Appeals has acknowledged the direct-benefits-estoppel doctrine. *Sterne, Agee & Leach v. Way*, 101 Ark. App. 23, 27 (2007) ("[A] nonsignatory can be estopped from refusing to comply with an arbitration clause if he has received a direct benefit from the contract.") (quoting *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000)). The Court predicts that the Arkansas Supreme Court would hold that direct benefits estoppel is available to bind a nonsignatory to an arbitration agreement.

*Id.* (cleaned up).

The Court finds this reasoning persuasive, particularly in light of Respondents' general stipulation that Oliver Builders consents to be included in an order granting Southwest Homes's Motion to Compel. The parties represented that Oliver Builders was created as a passthrough entity for payments made by Southwest Homes to the Olivers pursuant to their employment (e.g., sales commissions) at the Case Management Hearing and in their filings. Oliver Builders thus received a direct benefit of the employment contract between the Olivers and Southwest Homes, and the Court finds that it is bound to the Arbitration Agreement by the direct-benefits-estoppel doctrine. Insofar as the Agreement controls, so too does its delegation provision. Accordingly, the arbitrator's jurisdiction extends to the arbitrability of the pendent claims.

**IT IS THEREFORE ORDERED** that Southwest Homes's Motion to Compel Arbitration (Doc. 11) is **GRANTED**. Pursuant to the Arbitration Agreement's delegation clause, the arbitrator "shall have the sole authority to rule on his/her own jurisdiction," (Doc. 12, p. 11), with respect to the claims, counterclaims, and third-party claims presented in this matter.[2]

---

[2] Finally, Respondents argue that "should Arbitration be ordered, mediation should also be compelled as a condition precedent to arbitration under the policy." (Doc. 15, p. 6 n. 2.). Whether a condition precedent to arbitrability has been fulfilled is a procedural question that must be left for the arbitrator to decide unless the parties have clearly and

9

**IT IS THEREFORE ORDERED** that the parties are **COMPELLED TO ARBITRATION**. The Court declines to enter a formal stay of these proceedings. Instead, the Clerk of Court is **DIRECTED TO ADMINISTRATIVELY TERMINATE THE CASE**, and the parties may move to reopen it if further action of the Court is required after arbitration has been concluded.

**IT IS SO ORDERED** on this 29th day of April, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

unmistakably provided otherwise. *See Howsam*, 537 U.S. at 85 (citations omitted). They have not, so the mediation issue falls within the arbitrator's jurisdiction.